## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

        **v.**                                      :

**TROY DAVIS and**                          :
**CHRISTOPHER CURRY**                                    **CRIMINAL NO. 05 -384**

### GOVERNMENT'S TRIAL MEMORANDUM

**I.       Introduction, Description of Charges and Evidence**

      Both defendants are charged with conspiracy to distribute cocaine and one substantive count of distribution of cocaine.  The Indictment alleges that in or around April, 2005, defendants Troy Davis and Chris Curry arranged for the sale of 4 and ½ ounces of cocaine to David Johnson.  The source of the cocaine was Troy Jefferson, who pled guilty to the original indictment in this case and will testify at trial.  Subsequent to this transaction, on May 17, 2005, David Johnson was stopped in Coatesville, PA, and arrested for possession of 21 grams of cocaine base.  He subsequently agreed to cooperate with Coatesville Police and the DEA.  Beginning on June 9 and continuing through June 11, 2005, David Johnson spoke to Troy Davis to arrange for the sale of a kilogram of cocaine from Troy Jefferson to David Johnson.  As on the occasion of their first dealing for the 4 and ½ ounce sale, Davis contacted Christopher Curry, who in turn contacted Troy Jefferson in an attempt to consummate the transaction.  Testimony and recordings of telephone conversations and a recording from a body wire worn by David Johnson will establish that Davis met with David Johnson at a mall in Northeast Philadelphia, and both Johnson and Davis spoke to Curry and Jefferson in an attempt to complete the transaction for a kilogram of cocaine on June 11, 2005.  Because Jefferson could not obtain

cocaine on that date, the deal was not completed.[1]

Count Two of the superseding indictment charges Davis and Curry with the distribution of the 4 and ½ ounces of cocaine to David Johnson in or around April, 2005. Because David Johnson was not cooperating with law enforcement at the time of this transaction, this cocaine was not recovered.  The government will therefore rely on the testimony of David Johnson and Troy Jefferson to establish this delivery.

## II.    Conspiracy and Co-Conspirator Statements

### A.    Conspiracy Generally.

Where, as here, the indictment charges the existence of a conspiracy containing multiple members, the United States must provide evidence at trial that will allow a reasonable fact finder to conclude beyond a reasonable doubt that the defendant and at least one other person shared a "unity of purpose" or the intent to "achieve a common goal" and an agreement to "work together toward the goal." United States v. Applewaite, 195 F.3d 679, 684 (3d Cir. 1999) (citations omitted).  The United States is not required to prove the existence of an express or formal agreement; "a tacit understanding is sufficient." Ianelli v. United States, 420 U.S. 770,

---

[1] Six days later, on June 16, 2005, Jefferson met again with David Johnson in the parking lot of a restaurant on City Avenue in Philadelphia and showed Johnson 500 grams of cocaine, which he intended to sell to Johnson.  When Johnson got out of the car in which Jefferson was driving and gave agents the signal to arrest, Jefferson and his companion left the area, as they had seen vehicles with tinted windows and (correctly) believed them to be police.  After following Jefferson a short distance, he and his driver (Abdul Muhammad) were arrested, and the cocaine was recovered where Jefferson had thrown it from the vehicle.  Neither Davis nor Curry were present for this transaction, however, Curry was recorded on a series of calls to Johnson shortly after Jefferson's arrest, in which Curry offers to obtain cocaine for Johnson when Johnson advises him that he did not take the 500 grams offered by Jefferson.  The government will seek to play these calls as further evidence of Curry's involvement in the scheme to obtain cocaine for Johnson.

777 n.10 (1975).  Further, proof of the existence of an agreement may be established entirely by circumstantial evidence.  Conspiracy law merely requires that the inferences drawn have a logical and convincing connection to the evidence.  Applewaite, 195 F.3d at 684.  Moreover, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence."  United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992).  It bears observing that the government, to sustain a conspiracy conviction, need only show sufficient evidence that the defendant conspired with "someone -- anyone."  United States v. Pressler, 256 F.3d 144, 149 (3d Cir. 2001) (quoting United States v. Obialo, 23 F.3d 69, 73 (3d Cir. 1994)).  Here, the evidence of the agreement will be provided by both ends of the transaction, that is by David Johnson, the ultimate purchaser of the cocaine, and Troy Jefferson, the original source of the cocaine.  Jefferson knew Curry, and Johnson knew Davis – Davis and Curry knew each other.

The United States will present evidence of these associations from the first witness called.

        B.      Admissibility of Coconspirator Statements.

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement made by a co-conspirator of a party during the course and in furtherance of that conspiracy" is not hearsay and may be admitted as evidence against a co-conspirator.  In order for a court to admit the co-conspirator statements, the government must prove: (1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; (3) that the statements were made in the course of the conspiracy; and (4) the statement was made in furtherance of the

conspiracy.  United States v. Bourjaily, 483 U.S. 171, 175 (1987); United States v. McGlory, 968 F.2d 309, 333-34 (3d Cir. 1992); United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991).

In making a preliminary factual determination as to the existence of a conspiracy and the defendant's participation in it, courts may consider the offered hearsay statement itself. Bourjaily, 483 U.S. at 180-81. "[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." Id.  See also McGlory, 968 F.2d at 334. Moreover, the district court may consider the totality of the circumstances when deciding the admissibility of such evidence.  "The circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement is made, or evidence corroborating the contents of the statement," should be considered by the trial court.  See Fed. R. Evid. 801(d)(2) (Advisory Committee Notes).  Furthermore, the existence of the conspiracy and the party's participation in that conspiracy need only be proved by a preponderance of the evidence. Bourjaily, 483 U.S. at 175.

Although casual conversations between co-conspirators are inadmissible, statements that, among other things, maintain cohesiveness and convey information relevant to conspiratorial objectives are in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E). United States v. Traitz, 871 F.2d 368, 399 (3d Cir. 1989), cert. denied, 493 U.S. 821 (1989).  Accordingly, it has been held that in a drug conspiracy "statements of a co-conspirator identifying a fellow co-conspirator as his source of narcotics are statements made in furtherance of the conspiracy." United States v. Lambros, 564 F.2d 26, 30 (8th Cir. 1977), cert. denied, 434 U.S. 1074 (1978). See United States v. Munson, 819 F.2d 337, 341 (1st Cir. 1987);

United States v. Anderson, 642 F.2d 281, 285 (9th Cir. 1981).

The Third Circuit has commented that the "in furtherance" requirement is to be given a broad interpretation. United States v. Gibbs, 739 F.2d 838, 843 (3d Cir. 1984), cert. denied, 469 U.S. 1106 (1985); United States v. DePeri, 778 F.2d 963, 981 (3d Cir. 1985), cert. denied, 475 U.S. 1110 (1986). Moreover, although the "during the course of" and "in furtherance" requirements do not overlap entirely, they are closely related. United States v. Ammar, 714 F.2d 238, 253 (3d Cir.), cert. denied, 464 U.S. 936 (1983). While mere narratives of past events or mere idle chatter that has no current purpose do not generally occur in furtherance of the conspiracy, statements that "provide reassurance, serve to maintain trust and cohesiveness among co-conspirators, or inform each other of the current status of the conspiracy furthers the ends of the conspiracy." Id. at 252

In determining whether a particular statement was made during and in furtherance of the conspiracy, the trial court should examine the circumstances under which the statement was made. United States v. Traitz, 871 F.2d 368, 399 (3d. Cir.), cert. denied, 493 U.S. 821 (1989). Statements in which co-conspirators were kept abreast of the status of the conspiracy have been found to be in furtherance of the conspiracy. See, e.g. United States v. Harris, 908 F.2d 728, 737 (11th Cir. 1990); United States v. Hudson, 970 F.2d 948, 958-59 (1st Cir. 1992). Moreover, in order for statements to be deemed "in furtherance of the conspiracy," they need not "further" the conspiracy; rather it is sufficient that a statement was intended to promote the conspiracy even if it did not actually do so. See United States v. Williams, 989 F.2d 1061, 1068 (9th Cir. 1993); United States v. Mayes, 917 F.2d 457, 464 (10th Cir. 1990).

Moreover, the trial court may admit statements pursuant to the Rule even if the

statements relate to a conspiracy not charged in the indictment.  United States v. Ellis, 156 F.3d 493, 497 (3d Cir. 1998); United States v. Trowery, 542 F.2d 623, 626 (3d Cir. 1976). The rationale for this rule is that the co-conspirator provision in Rule 801(d)(2)(E) is merely a rule of evidence founded on the theory "that a person who has authorized another to speak or act to some joint end will be held responsible for what is later said or done by his agent . . ."  Trowery, 542 F.2d at 626.

This proposition will become relevant to this trial during testimony by David Johnson and Detective Sean Murrin concerning telephone calls received by Johnson on June 16, 2005 after the arrest of Troy Jefferson.  While outside the dates of the conspiracy charged in the indictment, this continuation of the communication between Curry and Johnson, in which Curry offers to obtain substitute cocaine for Johnson because he did not take the cocaine brought to him by Jefferson, is clearly admissible as statements made in furtherance of the conspiracy

## III.    **Presentation of Audiotapes**

As noted above, a series of telephone calls and the face to face meeting between Troy Davis and David Johnson were audio recorded.  These audio recordings were the subject of an earlier hearing before this Court on September 12, 2005, and the Court deemed the audio tapes authentic.  Transcripts and copies of the actual recordings were provided to both counsel during the discovery process.  A clean set of copies of transcripts will be provided to counsel and to the Court at the beginning of trial.  The government will request that these copies be provided to jurors to aid in listening to those recordings which the government will play during its case in chief.  (The government does not intend to play all of the recordings provided to counsel).

## IV.    **Expert Witnesses**

The government does not intend to call any expert witnesses in this case.

## V.    Elements of Offenses

The elements of the offenses charged are as follows:

Conspiracy (Count One)

1.    There was an agreement to distribute a controlled substance; and

2.    The defendant knowingly joined in the agreement.

Distribution (Count Two)

1.    The defendant distributed or assisted in distributing a controlled substance; and

2.    The defendant did so knowingly and intentionally.

## VI.    Proposed Stipulation

The government will forward to counsel for the defendants a proposed stipulation for the admission of a two page document from Virgin Mobile USA telephone company.  The stipulation will address only the authentic nature of the business record, that is, that the document is an authentic record kept in the ordinary course of business by Virgin Mobile USA.  The government anticipates having an affidavit from the Records Custodian for Virgin Mobile USA indicating that the records were retrieved from the business records kept in the ordinary course by Virgin Mobile.

Witnesses in the trial will testify to the contents of the record, which is a listing of calls made into and out of Troy Jefferson's cell phone between June 11, 2005 at 12:45 a.m. and June 16, 2005 at 11:49 p.m.  The document was provided to counsel in discovery.

The stipulation, if agreed upon, will be provided to the Court and, with the

Court's permission, presented to the jury.

Because the drug quantity charged in Count One of the indictment gives rise to a higher maximum sentence, special interrogatories will be necessary. These will be submitted to the Court with the government's proposed verdict sheet.

## VII.    Notice of Rule 404(b) Evidence

The government has provided *Jencks* material to defense counsel via Federal Express for delivery on January 18, 2006. The government has noted in its letter that in a report of interview of Troy Jefferson from December 5, 2005, Mr. Jefferson advised agents and the undersigned that on two occasions shortly before the sale of the 4 and ½ ounces of cocaine to Johnson, Jefferson provided defendant Christopher Curry with ½ ounce quantities of cocaine. The United States contends that this evidence is admissible as evidence which is "inextricably intertwined" with the charged conduct. Should the Court disagree, the government contends that the evidence is still admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, as it demonstrates Curry's intent and lack of mistake in contacting Jefferson to deliver cocaine to Johnson in April and again in June of 2005, that is, these earlier deliveries to Curry showed Curry that Jefferson was, in fact, a trafficker of cocaine.

A.    The Evidence is Inextricably Intertwined with the Charged Conduct.

Defendant Curry is charged with participating in a conspiracy which began in April of 2005 and lasted through June 11, 2005. During that time, the government will provide proof that Curry set up one transaction in which Jefferson delivered 4 and ½ ounces of cocaine to Johnson in the presence of both Curry and Troy Davis. A second transaction, planned for June 11, 2005, was not consummated, although Davis met with Johnson and Curry had repeated

telephone contact with both Davis and Johnson in an attempt to proceed with the deal. Troy Jefferson will testify that the reason Curry knew to approach him to sell 4 and ½ ounces of cocaine to David Johnson was that Curry himself had obtained ½ ounce quantities of cocaine from Jefferson on two occasions in the days before Davis called Curry looking for a source of cocaine for Johnson.

The Third Circuit has held that "Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense." United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) (holding that defendant's participation in uncharged acts of violence was admissible as direct proof of the conspiracy with which he was charged). Other Circuits have held, even more broadly, that evidence falls outside Rule 404(b) where it is "inextricably intertwined" with the offense charged. In United States v. Cross, 308 F.3d 308 (3d Cir. 2002), this Circuit cast some doubt on this notion as "fuzzy," reading Gibbs as stating only that "acts are intrinsic when they directly prove the charged conspiracy." Id. at 320.

Several reported cases demonstrate clearly, however, that such direct proof of a charged conspiracy is not considered extrinsic and is not governed by Rule 404(b). "Evidence of criminal activity other than the charged offense is not considered extrinsic within the proscription of Rule 404(b) of the Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, . . . if it was inextricably intertwined with the evidence regarding the charged offense, . . . or if it is necessary to complete the story of the crime of trial." (Citations omitted). United States v. Weeks, 716 F.2d 830, 832

9

(11th Cir. 1983).    See also United States v. Record, 873 F.2d 1363, 1372 at n. 5 (10th Cir. 1989)

("Rule 404(b) only applies to evidence of acts extrinsic to the charged crime.  An uncharged act

may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if

it was 'inextricably intertwined' with the charged crime such that a witness' testimony 'would

have been confusing and incomplete without mention of the prior act.'") (Citations omitted);

United States v. Bass, 121 F.3d 1218, 1222 (8th Cir. 1997) ("As it happens, though, we need not

apply the legal doctrines developed under Rule 404(b).  This is because our inspection of the

record has revealed that the district court did not view the evidence as representative of other

crimes or bad acts, but instead thought it bore directly upon Bass's participation in the very

conspiracy described in the indictment.").

In United States v. Gray, 292 F. Supp.2d 71 (D.C. 2003), the defendant was

charged in drug and RICO conspiracies.  Evidence of acts of violence, including the murder of a

man who had been in a street fight with the defendant's uncle, obstruction of a murder

investigation, and an attempt to kill an eyewitness to the murder, was properly admitted, the court

held, as proof of the method by which the conspiracy created, maintained and controlled the

marketplace for its drugs, and as proof of the manner in which the organization's members

protected their enterprise and its individual members from detection, apprehension and

prosecution.  Id. at 78.  Gray argued that the conspiracy charged in the indictment should be

narrowly construed to consist only of "core charges of purchase, storage, sale and distribution of

narcotics" and that any evidence "that was not direct proof of purchase, storage, sale or

distribution of narcotics was improperly introduced by the government and improperly admitted

by the Court."  Id.  The district court held, in denying Gray's motion for new trial, that each piece

of evidence introduced by the government was direct proof of one or more of the elements that the government was obligated to prove, for either the drug or RICO conspiracies.  The evidence was not introduced or admitted to show Gray's bad character.

Evidence of prior drug trafficking activity has been shown to be inextricably intertwined in the context of a drug conspiracy.  See United States v. Royal, 972 F.2d 643, 647-48 (5th Cir. 1992), cert. denied, 507 U.S. 911 (1993) (defendant's drug trafficking prior to his imprisonment was intrinsic evidence because it was inextricably intertwined with his subsequent formation of the charged drug conspiracy); United States v. Costa, 691 F.2d 1358, 1361 (11th Cir. 1982), cert. denied, 467 U.S. 1218 (1983) (prior drug trafficking is intrinsic because it explains the relationship of the conspirators); see also United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993).

Here, the government's case should not be limited to the single sale in April, 2005 and the subsequent attempted sale on June 11, 2005.  Troy Jefferson's testimony is incomplete, and indeed makes little sense, if he is unable to advise the jury that Curry knew he could come to Jefferson to obtain cocaine for Johnson, because Jefferson was a cocaine trafficker who had previously provided cocaine to Curry.

B.      The Evidence is Admissible Pursuant to Rule 404(b).

Rule 404(b) of the Federal Rules of Evidence provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . .

The drafters of Rule 404(b) "intended to emphasize admissibility of other crimes

evidence." United States v. Long, 574 F.2d 761, 766 (3d Cir. 1978).  This emphasis is consistent with the long history in the Third Circuit of favoring admission of such evidence, "if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." Id.; see also United States v. Simmons, 679 F.2d 1042, 1050 (3d Cir. 1982); United States v. Dansker, 537 F.2d 40, 58 (3d Cir. 1976).

The Supreme Court has held that evidence is admissible under Fed. R. Evid. 404(b) when the following requirements are satisfied: (1) a proper evidentiary purpose; (2) relevance under Fed. R. Evid. 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under Fed. R. Evid. 403; and (4) a limiting instruction concerning the purpose for which the evidence may be used.  See United States v. Console, 13 F.3d 641, 659 (3d Cir. 1993)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Ultimately, Rule 404(b) is a rule of inclusion, not exclusion.  Console, 13 F.3d at 659; United States v. Sampson, 980 F.2d 883 (3d Cir. 1992); Government of Virgin Islands v. Edwards, 903 F.2d 267, 270 (3d Cir. 1990).  "Thus, the burden on the government is not onerous.  All that is needed is some showing of a proper relevance.  Whereupon the trial court must judge the government's proffered reason, the potential for confusion and abuse, and the significance of the evidence, and decide whether its probative value outweighs its prejudicial effect." Sampson, 980 F.2d at 888.  "The parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction." Id.

Where the government offers bad act evidence, "it must clearly articulate how that evidence fits into a chain of logical inference, no link of which can be the inference that because

the defendant committed . . . offenses before, he therefore is more likely to have committed this one." Sampson, 980 F.2d at 886.  Once the government has done so, the district court must weigh the probative value of the evidence against its potential to cause undue prejudice and articulate a rational explanation on the record for its decision to admit or exclude the evidence. See United States v. Himelwright, 42 F.3d 777, 780 (3d Cir. 1994); United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994); Sampson, 980 F.2d at 889; see also Huddleston, 485 U.S. at 691. The district court's weighing process under Rules 404(b) and 403 are reviewed only for abuse of discretion, and the district court receives considerable leeway.  See Sampson, 980 F.2d at 886.

In the instant case, the evidence which the government seeks to admit, that Curry obtained cocaine from Jefferson on two prior occasions, is both relevant and offered for a proper purpose because it constitutes straight-forward evidence of the defendant's intent, and shows a lack of mistake or accident, in setting up the transaction between Jefferson and Johnson.  This evidence is also extremely probative, particularly given the government's reasonable expectation that the defendant will claim at trial that the defendant had nothing to do with the drug transactions, but simply put Jefferson in touch with Johnson, through Troy Davis, for some unknown purpose.  Moreover, the proffered 404(b) evidence in this case has an extremely strong connection to the crimes charged:  the evidence demonstrates that this defendant is aware of Jefferson's vocation as a trafficker of cocaine, and has availed himself of Jefferson's wares in the past.  The jury in this case will not be called upon to speculate or draw strained inferences regarding the 404(b) evidence.

It is well established that in conspiracy cases, showing "the background of the charges, the parties' familiarity with one another, and their concert of action" are permissible

13

purposes for the admission of evidence under Rule 404(b).  United States v. O'Leary, 739 F.2d 135, 136-37 (3d Cir. 1984), cert. denied, 469 U.S. 1107 (1985).  Thus, in O'Leary, the Third Circuit upheld the admission of evidence that, one year prior to the charged conspiracy to distribute cocaine, the defendant sold cocaine 20 times to his co-conspirator.  Id. at 136-37; accord  United States v. Palma-Ruedas, 121 F.3d 841, 851-52 (3d Cir. 1997) (prior 14-kilogram drug transaction admissible to show the background of the conspiracy, the relationship between the conspirators, their preparation, and their method of operation); United States v. Echeverri, 854 F.2d 638, 644 (3d Cir. 1988) (evidence of prior cocaine trafficking admissible to explain defendant's "subsequent organization of, and participation in, the charged conspiracy," and his access to the necessary personnel).  Here, the proximity in time of the two prior transactions, just days or weeks before the charged conduct, weighs in favor of admission under these decisions.

Both because the evidence of the two prior transactions between Jefferson and Curry was intrinsic to the case, and because it is offered for the legitimate purposes under Rule 404(b) of providing the jury with an accurate view of the background of the conspiracy and the relationship of the defendants, it is admissible "subject only to the ordinary limitations under Fed. R. Evid. 402 and 403."  United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988); Government of Virgin Islands v. Harris, 938 F.2d 401, 419 (3d Cir. 1991); see  Huddleston v. United States, 485 U.S. at 688, 691. As set forth above, the evidence was plainly relevant and thus admissible under Rule 402. See Fed. R. Evid. 401 (evidence is relevant if it has any tendency to make a fact of consequence to the case more probable); New Jersey v. T.L.O., 469 U.S. 325, 345 (1985).  Under Rule 403, relevant evidence is admissible unless "its probative value is substantially outweighed by its potential for unfair prejudice."  Fed. R. Evid. 403

14

(emphasis added).  Unfair prejudice arises only if the evidence will cause the jury to base its decision on "something other than the established propositions in this case," such as extreme emotion. United States v. McGlory, 968 F.2d 309, 339 (3d Cir.), cert. denied, 506 U.S. 956 (1992) (testimony that defendant sold large amounts of cocaine on a regular basis is not unduly prejudicial); see Carter v. Hewitt, 617 F.2d 961, 972 & n.14 (3d Cir. 1980).  Here, the limited nature of the Government's evidence minimizes any prejudice.

Although there is always some prejudice associated with evidence of other bad acts, the issue under Fed. R. Evid. 403 is whether the probative value of the evidence is substantially outweighed by unfair prejudice, not whether there is any prejudicial effect at all.

Accordingly, admission of the defendant's prior transactions with Troy Jefferson is proper either as inextricably intertwined evidence or under Rule 404(b), the controlling case law, and the facts of this case.

## VIII.   Defendant Davis' Prior Conviction

Counsel for defendant Davis has advised that his client may testify at trial, and has filed a motion to preclude the United States from introducing evidence of Davis' prior conviction for murder.  While the United States does not intend to introduce this evidence during its case in chief, it is appropriate to cross examine Troy Davis with his criminal record, should he take the stand.  This Court should deny the defendant's motion.

A.      Admissibility of Prior Crimes During Cross-Examination of Defendant

In the event that the defendant testifies at trial, the government respectfully submits that it should be allowed to cross-examine the defendant regarding his criminal conviction.  The government does not seek to present this evidence during its case in chief, and

therefore, the invocation of Federal Rule of Evidence 404(b) by the defendant in his motion *in limine* is misplaced.  In fact, the evidence is relevant and should be permitted as proper cross-examination under Rule 609.

The defendant has a single adult conviction in 1997 for murder in the third degree, robbery, and criminal conspiracy.  The defendant was sentenced on February 26, 1997 to a term of 8 to 16 years imprisonment.  While the United States does not have a record of his exact release date, Davis served at least 8 years from December 28, 1993, the date of his arrest, or at least through December 27, 2001, and is still on parole for that conviction.

Fed. R. Evid 609(a)(1) provides that "evidence that an accused has been convicted [of a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Further, Rule 609(b) provides that "evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction *or of the release of the witness from the confinement imposes for that conviction, whichever is the later date. . .* " Defendant argues that this conviction is nearly nine years old, however, he measures that from the 1997 date of his guilty plea.  The defendant was not released from prison until at least 2001, and was still on parole when the transactions at issue here occurred.

The United States concedes that the defendant's 1997 conviction for murder does not involve a crime of false statement or dishonesty for the purposes Rule 609, and hence is not automatically admissible.  Application of the relevant balancing test of Rule 609(a)(1), however, still strongly supports the admission the conviction if the defendant testifies, particularly because the defendant committed the instant drug offense while on parole for his prior conviction, and

therefore has an even greater incentive to lie on the stand, i.e., to be biased, in order to try to avoid the consequences for having violated the terms of his parole.

"Evidence of a prior conviction can be admitted under Rule 609(a)(1) solely for the purposes of attacking credibility." Government of the Virgin Islands v. Bedford, 671 F.2d 758, 761 (3d Cir.1982). The Third Circuit has set forth four basic factors to be considered in balancing the probative value and prejudicial effect when applying this Rule: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; [and] (4) the importance of the credibility of the defendant." Id. at 761 n.4; see also United States v. Mahone, 537 F.2d 922, 929 (7th Cir. 1975) (citing 3 J. Weinstein, Evidence ¶ 609 [03] at 609-78 to 609-75). Accordingly, evidence that may have been inadmissible under Rule 404(b) is nevertheless admissible under Rule 609 because a testifying defendant's credibility is the central issue. See United States v. Haslie, 160 F.3d 649 (10th Cir. 1998); United States v. Valencia, 61 F.3d 616 (8th Cir. 1996); United States v. Smith, 49 F.3d 475 (8th Cir. 1995). The mere fact that the jury might consider a prior similar charge as evidence of defendant's character, standing alone, does not warrant exclusion of the prior conviction, when the defendant's credibility and testimony are essential to the case. See Smith, 49 F.3d 475; Valencia, 61 F.3d 616; United States v. Perkins, 937 F.2d 1397 (9th Cir. 1991).

1.    The Kind of Crime Involved

Even though the defendant's murder conviction does not involve a crime of dishonesty, and therefore is not immediately admissible, juries routinely are instructed that a prior felony is appropriately considered when assessing a witness' credibility, see Devitt and Blackmar § 15.08, on the assumption that felony convictions are relevant. In this case, the

17

defendant's felony conviction is relevant to the jury's assessment of his credibility, if he takes the stand in his own defense, and therefore should be admissible for impeachment purposes.  Many courts, pursuant to Rule 609(a)(1), have upheld the admission of non-*crimen falsi* felonies such as the instant conviction.  See, e.g., United States v. Smith, 131 F.3d 685 (7th Cir. 1997) (where defendant's testimony directly contradicts other witness's credibility on essential issue, prior criminal convictions are admissible for impeachment purposes); United States v. Perkins, 937 F.2d 1397, 1406 (9th Cir. 1991) (upholding admission of bank robbery conviction, pursuant to Rule 609(a)(1)); United States v. Castor, 937 F.2d 293, 298-99 (7th Cir. 1991) (affirming admission of prior battery and weapons conviction); United States v. Browne, 829 F.2d 760, 762-64 (9th Cir. 1987) (jury properly allowed to consider testifying defendant's prior bank robbery conviction); United States v. Walker, 817 F.2d 461, 463-64 (8th Cir. 1987) (upholding impeachment of defendant through prior arson conviction); United States v. Johnson, 720 F.2d 519, 522 (8th Cir. 1983) (affirming impeachment of testifying defendant with prior firearms conviction); United States v. Oakes, 565 F.2d 170, 173 (1st Cir. 1977) (upholding impeachment with defendant's prior manslaughter conviction).

Further, the important fact that the defendant is on trial for offenses which he committed while he was serving a period of state parole resulting from his murder conviction is clear evidence of bias under Rule 607, if the defendant testifies.

Fed. R. Evid. 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."  Bias is *always* relevant in assessing a witness's credibility.  See Davis v. Alaska, 415 U.S. 308, 316-17 (1974); see also Schledwitz v. United States, 169 F.3d 1003, 1015 (6th Cir. 1999) (citing United States v. Lynn, 856 F.2d 430,

432 n. 3 (1st Cir.1988); <u>Villaroman v. United States</u>, 184 F.2d 261, 262 (D.C. Cir. 1950)).  The

Supreme Court has defined bias as "the relationship between a party and a witness which might

lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a

party."  <u>United States v. Abel</u>, 469 U.S. 45, 52 (1984).  Bias is not limited to personal animosity

or desire for pecuniary gain.  <u>See</u> <u>Schledwitz</u>, 169 F.3d at 1015.  Courts have found bias in a

wide variety of situations, including family or sexual relationships, employment or business

relationships, friendships, common organizational memberships, and cases in which the witness

has a litigation claim against another party or witness.  <u>Id.</u> (citing Weinstein's Federal Evidence

§§ 607.04[5]-[7] (1997) (collecting cases)).  The fact that the defendant's 1997 conviction and

attendant period of parole subjects him to even greater sanctions if he is convicted at this trial

constitutes an additional and independent reason, beyond merely Rule 609 grounds, to admit the

conviction in this case as impeachment evidence of bias.

> 2.      <u>When the Conviction Occurred</u>

The defendant's murder conviction occurred about 9 years ago.  As such, this

prior conviction is not so remote in time as to create unfair prejudice to the defendant.  In

addition, the murder conviction is dissimilar from the charged offenses, and therefore is less

likely to be susceptible to a jury mistakenly inferring that such a conviction is relevant for any

purpose other than impeachment.  <u>See</u> J. Weinstein, Evidence, ¶¶ 609-03, 609-37 (<u>citing</u> <u>Gordon</u>

<u>v. United States</u>, 383 F.2d 936 (D.C. Cir. 1967); <u>United States v. Bailey</u>, 426 F.2d 1236 (D.C.

Cir. 1970)).

> 3.      <u>The Importance of the Witness' Testimony to the Case</u>

Should he elect to testify, the defendant's testimony will become of central

importance to this case and to any defense that he may offer at trial. The government cannot anticipate at this time what specific testimony the defendant might give. However, the defendant's account of the purported "facts," denials of participation in any criminal activity or wrongdoing, and any exculpatory explanations for his involvement in these drug transactions are obviously of great significance.

    4.      The Importance of the Credibility of the Defendant

In the upcoming trial, a key issue will be the credibility of the government witnesses' accounts of the defendant's actions, and that of the defendant if he testifies. If he testifies, the defendant surely will claim that Jefferson and Johnson fabricated his involvement in the drug transactions, and that the government's tangible evidence available on audio tape points to the wrong man. When a defendant testifies, he places his credibility "directly at issue," see United States v. Beros, 833 F.2d 455, 463-64 (3d Cir. 1987), and his prior conviction then bears on his credibility. See United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995).

Under these circumstances, it is not fair to allow the defendant, if he elects to testify, to hide from the jury the prior felony which casts doubt on his version of the facts. See Oakes, 565 F.2d at 173 (impeachment appropriate where there was a "sharp, irreconcilable conflict" between the testimony of the government's witnesses and that of the defendant, so that credibility was crucial). As the Ninth Circuit has recognized in Browne, 829 F.2d at 763, the government should not be forced to "sit silently by, looking at criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." The jury is entitled to know of this prior conviction in assessing the defendant's credibility, should he chooses to testify.

20

Finally, and in order to minimize any prejudice to the defendant, the Court should instruct the jury along the following lines:

> You have been told that the defendant was found guilty in 1997 of murder.  The conviction has been brought to your attention only because you may wish to consider it when you decide, as with any witness, how much you will believe of his testimony in this trial. The fact that the defendant was found guilty of another crime does not mean that he committed these crimes, and you must not use this previous conviction as proof of the crimes charged in this case. You may find him guilty of any of the crimes charge in the Indictment only if the government has proved beyond a reasonable doubt that he committed it.

See 6 Weinstein's Federal Evidence § 609.04[2][f] (quoting Federal Judicial Center, Pattern Criminal Jury Instruction, No. 41 (1987)); see also 1 Devitt, et al., Federal Jury Practice and Instructions § 11.09 (4th ed).  Jurors are presumed to follow such limiting instructions.  See, e.g., Shannon v. United States, 512 U.S. 573 (1994).

## IX.    Length of Trial

The United States anticipates that the presentation of its case-in-chief will take no more than one full trial day (excluding jury selection and opening statements).

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____
KATHY A. STARK
Assistant United States Attorney

21

CERTIFICATE OF SERVICE

I certify that I have served or caused to be served a copy via Electronic filing or first-class

mail, postage prepaid, of the Government's Trial Memorandum upon:

James F. Brose, Esq.
Brose Law Firm
206 South Avenue
Third Floor
Media, PA 19063

Qawi Rahman, Esq.
El-Shabazz & Harris
100 South Broad Street, Suite 1525
Philadelphia, PA 19110


_____
KATHY A. STARK
Assistant United States Attorney


DATE:  January 17, 2006.